IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76231-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| TREVOR STUART BUSH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 23, 2018 |
| | ) | |

BECKER, J. — Trevor Bush was charged with second degree burglary. The trial court declared a mistrial in the first trial when the prosecutor commented on Bush's exercise of his right to remain silent at the time he was arrested. Bush unsuccessfully sought to dismiss the charge with prejudice under CrR 8.3 for deliberate government misconduct. In the second trial, Bush was convicted. He now argues that the doctrine of double jeopardy barred the retrial. But the record does not support an inference that the prosecutor intended to goad the defendant into seeking a mistrial or was indifferent to the possibility that her remarks would cause a mistrial. We affirm.

## FACTS

Douglas Dahl awoke early one April morning in 2016 to the sound of motion sensor alarms. He heard grinding metal sounds coming from the property of his neighbor, leading him to call 9-1-1. Shortly thereafter, Dahl heard the

sound of a car ignition. He watched an older dark Ford truck drive past his house.

Police arrived in time to stop the truck at the nearest intersection. The truck belonged to appellant Bush, and he was driving it. He and his two passengers, Bradley Martin and Gabriel Vogan, were placed under arrest. An officer found a rototiller, a saw sharpener, and a box of trophies in the bed of the truck. These items belonged to Dahl's neighbor. Bush was charged with second degree burglary.

Bush took the stand on the second day of trial. He testified that on the morning in question, he and Martin were about to leave for their landscaping job when Vogan called and asked for a ride. He said he followed Vogan's directions and saw him standing by the side of the road next to a rototiller and some other items. He said he helped load the rototiller into the truck and just assumed it belonged to Vogan until the police arrived and stopped his truck as they were driving away. Bush testified that as this was happening, Vogan told him that the stuff was stolen, "and I told him, well, thanks a lot, now I'm going to get in trouble because of you."

The State began to cross-examine Bush and eventually worked up to asking him whether he had told the police officers any of this information at the time they first started talking to him. Bush objected and moved for a mistrial. The trial court found the question was in violation of Doyle v. Ohio, 426 U.S. 610, 611, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), and that it was intentional and deliberate:

THE COURT: You asked if he told them. That directly implicates his right to remain silent. And it was all intentional. You worked your way up to it quite deliberately. . . .

. . . .

. . . And the answer to that question, if it was not objected to, would clearly implicate his right to remain silent. And it is an error. It's considered an error of constitutional magnitude. And it was deliberate. This was not inadvertent. . . .

. . . .

. . . And the question was clearly intended as evidence of guilt, to elicit—it's basically making the point that if you were innocent, you would have said something about all this that night.

The court granted Bush's motion for a mistrial.

Before the second trial, Bush moved for dismissal under CrR 8.3. A motion to dismiss under that rule is not to be granted absent a showing of actual prejudice. State v. Michielli, 132 Wn.2d 229, 240, 937 P.2d 587 (1997). The trial court found that while the State's questioning was deliberate and prejudicial, the prejudice would not carry over to the second trial, thus the granting of a new trial was sufficient remedy. The CrR 8.3 motion was denied.

A second trial was set for November 21, 2016. After two days of testimony, the jury found Bush guilty of burglary in the second degree. He was sentenced to a jail term of 10 months.

## ANALYSIS

Bush assigns error to the order denying the motion to dismiss after the first trial, but he does not make an argument based on CrR 8.3(b). Instead, he makes a new argument: the prosecution's intentional misconduct in his first trial required the dismissal under the doctrine of double jeopardy.

Under the United States Constitution, the circumstances where a defendant may invoke the bar of double jeopardy in a second effort to try him

"are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." Oregon v. Kennedy, 456 U.S. 667, 679, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982) (Kennedy I). Oregon law differs in that double jeopardy will bar a new trial if the prosecutor is merely indifferent to the possibility of a mistrial:

> A retrial is barred by article I, section 12, of the Oregon Constitution when improper official conduct is so prejudicial to the defendant that it cannot be cured by means short of a mistrial, and if the official knows that the conduct is improper and prejudicial and either intends or is indifferent to the resulting mistrial or reversal.

State v. Kennedy, 295 Or. 260, 276, 666 P.2d 1316 (1983) (Kennedy II).

> Under the federal test the trial court must be able to find that the State was *intentionally* trying to provoke a mistrial. To obtain a dismissal under the federal test, the critical factor is the trial court's perception that the State's case was going badly and the prosecutor was looking for an excuse to start over. That perception is not necessarily essential to meet the Oregon standard of "indifference". Indifference, analogous to recklessness, occurs when the conscious misconduct of a State actor creates a risk of mistrial in the absence of actual intent to obtain a second chance to try the case.

State v. Lewis, 78 Wn. App. 739, 743, 898 P.2d 874 (1995), review denied, 128 Wn.2d 1012 (1996). The Washington Supreme Court has not settled whether the Washington Constitution follows the same standard as the Oregon Constitution. State v. Hopson, 113 Wn.2d 273, 283, 778 P.2d 1014 (1989).

The issue of double jeopardy was not raised before the trial court, and there was no finding as to the prosecutor's indifference or intent towards a mistrial. Because the trial court remarked that the improper question was posed deliberately, Bush urges this court to conclude that, at the very least, the

prosecutor was indifferent to the possibility of mistrial, placing the prosecutor's conduct within the criteria of the Oregon rule.

The record does not suggest that the State wanted to abandon the trial out of fear that it was heading toward an acquittal. The case against Bush was straightforward: he was pulled over at 4 a.m. driving a truck full of stolen goods. At the point where the mistrial was declared, the State had introduced photos of the truck's interior and evidence that the truck contained tin snips, flashlights, gloves, and screwdrivers as well as a collapsible baton and pepper spray. Bush successfully challenged the admission of some other items of evidence that the trial court judged to be either cumulative or irrelevant, but exclusion of such evidence was foreseeable and routine; it was not a severe blow to the State's case. The fact that Bush gave exculpatory testimony on his own behalf does not mean that the State would have seen acquittal as likely. As the State points out, Bush's argument ignores a key fact: the prosecutor opposed the granting of a mistrial.

Nor does the record present circumstances that would require reversal under the Oregon standard of Kennedy II. The prosecutor, after apologizing to the court for the improper cross-examination question, attempted to persuade the court that a curative instruction would be an adequate remedy. There is every indication that she had hoped to obtain a conviction in the first trial. Objective facts in the record do not support an inference that she was indifferent to the possibility of a mistrial, let alone that she was trying to provoke one.

Affirmed.

WE CONCUR: